IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TAUNYA L. MOSS,                )
                               )
        Plaintiff,             )
                               )
v.                             )   Case No. CIV-17-041-RAW-KEW
                               )
NANCY A. BERRYHILL, Acting     )
Commissioner of Social         )
Security Administration,       )
                               )
        Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Taunya L. Moss (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 36 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has no prior relevant work. Claimant alleges an inability to work beginning December 19, 2013 due to limitations resulting from right leg problems, lumbosacral spine disorder, depression, anxiety, and Hepatitis C.

### Procedural History

On December 23, 2013, Claimant protectively filed for

3

supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.[2] Claimant's application was denied initially and upon reconsideration. On November 17, 2015, Administrative Law Judge ("ALJ") B.D. Crutchfield conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On December 16, 2015, the ALJ issued an unfavorable decision. On January 17, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider her claims of pain and credibility; (2) reaching

---

[2] Claimant previously was found to be disabled on November 29, 2011 due to lumbar spine degenerative disease, status post-surgical repair of right femur fractures with retained hardware, right hip degenerative joint disease, left knee osteoarthritis, Hepatitis C, bipolar disorder, post-traumatic stress disorder, dependent personality trait disorder, and methamphetamine dependence, in remission. (Tr. 66). Claimant's benefits were terminated when she was imprisoned for nineteen months because she her imprisonment lasted longer than twelve months. (Tr. 40-41).

4

an RFC did not contain all of Claimant's limitations; and (3) omitting an analysis of Claimant's obesity and its effect upon her RFC.

### Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post metal rod in the right femur bone with open reduction internal fixation, affective disorder, anxiety, and substance addiction in remission. (Tr. 12). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, she found Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit, stand, and/or walk six hours in an eight hour workday, with normal breaks, was able to push or pull 20 pounds occasionally and ten pounds frequently, was able to perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation. Claimant was able to have only occasional contact with the public. (Tr. 15).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of office cleaner, electrical assembler, and press machine operator, all of which were found to exist in sufficient numbers both regionally and nationally. (Tr. 22). As a result, the ALJ found Claimant was not disabled since December 23, 2013. Id.

Claimant contends the ALJ failed to conduct a proper evaluation of her claims of pain and her credibility generally. Claimant challenges the adequacy of the ALJ's findings on credibility where the initial conclusion includes the often used but uninformative phrase

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. (Tr. 16).

The ALJ, however, did not end her findings on credibility with the above generalized statement. The ALJ accurately set forth Claimant's testimony at the hearing including the swelling she suffers in her right leg due to the hardware installed in the leg. (Tr. 16, 42). The ALJ also recognized Claimant's statements regarding the pain she suffers from a ruptured disc in her back and from a previous rape. (Tr. 16, 43). Claimant engages in a curious argument in the briefing concerning the preparation of the ALJ's decision by an "Attorney Writer" and that the ALJ's actual beliefs are not accurately represented in the decision. Claimant bases this argument, in part, upon the ALJ's statement at the hearing that she "believe[s] everything that [Claimant] said." (Tr. 54). The ALJ then stated the standard by which Claimant's assertions must be

6

evaluated that "I have to go by what the doctors say" and that just because Claimant had been on disability before she went to prison did not mean she would necessarily receive the same benefits under the claim under consideration. (Tr. 55).

In the decision, the ALJ proceeded through the medical evidence which she asserted supported her findings on credibility. (Tr. 16-21). The ALJ concluded that while she did not discount all of Claimant's complaints, the medical evidence indicated none of the impairments were severe enough to prevent the participation in substantial gainful activity. (Tr. 21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain

or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements.  The stated consideration of the objective medical evidence forms specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### RFC Evaluation

Claimant contends that because she was determined to be disabled in a prior application, she should be found disabled under the current application since she has not received further treatment nor an improvement of her condition.  The regulations do not support Claimant's position.  The consideration of a claimant's benefit status when the claimant is incarcerated is well-stated in the case of Brennan v. Astrue, 501 F.Supp.2d 1303 (D. Kans. 2007).  The court in Brennan found

> Payment of SSI benefits is suspended effective with the
> first full month an individual is a resident of a  public

>institution. 20 C.F.R. § 416.1325. Benefits for which payments have been suspended will be resumed "effective with the earliest day of the month in which a recipient is no longer a resident of a public institution." 20 C.F.R. § 416.1325(b). However, benefits will be terminated "following 12 consecutive months of benefit suspension for any reason . . . effective with the start of the 13th month after the suspension began." 20 C.F.R. § 416.1335.
>
>Thus, when an individual is incarcerated for a period of more than twelve months, her SSI benefits will be terminated regardless of the presence or absence of medical improvement in her impairment(s). That is what happened here. Plaintiff's benefits were terminated when they had been suspended for twelve consecutive months of incarceration. When plaintiff was released from prison, her benefits could not be resumed because they had been terminated. Therefore, plaintiff made a new application for SSI benefits. Because this case involved a new application rather than a continuing disability review, the ALJ applied the five-step sequential evaluation process provided in 20 C.F.R. § 416.920 rather than the seven-step medical improvement standard provided in 20 C.F.R. § 416.994 for continuing disability reviews. There was no error in the failure to apply the medical improvement standard.

Brennan, 501 F. Supp. 2d at 1308-09.

In this case as in Brennan, Claimant's benefits were terminated due to her 19 month incarceration. Claimant obliquely argues that Defendant must show some change or improvement to her condition which existed when she was awarded benefits in a prior application in order to deny benefits in the current application. Since the benefits were terminated, Claimant's medical impairments are subject

to an entirely new evaluation under the five step process. The fact remains that none of Claimant's providers found her to suffer from impairments which rise to the level of limitation urged by Claimant. Claimant received treatment and medication for her mental conditions while in prison. (Tr. 412-33). She continued to receive treatment and counseling when she was released with no abnormal findings. (Tr. 437, 443).

On March 25, 2014, Claimant was evaluated by Dr. Denise LaGrand. Dr. LaGrand diagnosed Claimant with major depressive disorder and generalized anxiety disorder and concluded she was capable of performing low skill tasks in a work setting. (Tr. 494).

Dr. Ronald Schatzman examined Claimant on April 23, 2014. While Claimant demonstrated a limitation with hip adduction on the right, Claimant's gait was safe and stable with appropriate speed and no walking aid. No muscle atrophy was noted. Heel/toe walking was normal. Tandem gait was within normal limits. Claimant's cervical, thoracic, and lumbar-sacral spines were non-tender with full range of motion. Straight leg raising was negative. (Tr. 505).

Evaluations of Claimant's records by Dr. Craig Billinghurst, Dr. Burnard Pearce, Dr. David McCarty, and Dr. Carolyn Goodrich all found Claimant to be able to perform within the functional range found by the ALJ in the RFC. (Tr. 80-82, 96-99).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

## Consideration of Obesity

Claimant contends the ALJ should have found her obesity to be limiting in the RFC. Claimant weighed between 180 and 203 pounds over the course of the relevant period with a height of 67". (Tr.

418-19, 441, 504). Claimant's body mass index ("BMI") would range from a 28.2 to 31.8 - a range that would merely be "overweight" under the regulations to a Level I - the lowest level of obesity. Soc. Sec. R. 02-1p. No medical provider found Claimant to be obese as a medical finding or any limitations arising from the condition when she fell within the range. Speculation upon the effect of obesity is discouraged.[3] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.). Given the lack of medical findings during the periods when she would have been considered obese and Claimant's failure to indicate obesity as an impairing condition, this Court finds no error in the ALJ's evaluation.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision

---

[3] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

by the District Court based on such findings.

DATED this 2nd day of January, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE